IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KAL CLAYTON KENFIELD, <br><br> Petitioner, <br><br> vs. <br><br> DOUGLAS FENDER; ATTORNEY GENERAL OF THE STATE OF MONTANA, <br><br> Respondents. | Cause No. CV 16-119-GF-DLC-JTJ <br><br> FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Kal Kenfield's petition for writ of habeas corpus. Kenfield is a state prisoner proceeding pro se.

On December 28, 2016, Respondents were directed to file certain documents from the state courts' records. They complied on February 7, 2017. Kenfield had an opportunity to admit or deny the correctness of the documents. *See* Rule 7(c), Rules Governing § 2254 Cases ("§ 2254 Rules"). On February 21, 2017, he submitted an additional document that he previously attached as an exhibit to one of his state postconviction petitions. *See* Pet'r Resp. (Doc. 8) at 1-2.

**I. Preliminary Review**

The petition is subject to preliminary review. *See* Rule 4, § 2254 Rules. If, on the face of the petition and any attached exhibits, it is not clear whether

1

petitioner is entitled to relief, the judge "must order the respondent to file an answer, motion, or other response . . . or to take other action." As noted, the Court directed the State to file certain documents from the record of the proceedings in state court.

A petitioner is "expected to state facts that point to a real possibility of constitutional error." Rule 4, § 2254 Rules, Committee Note (1976) (quotation marks omitted) (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)); *see also Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (Schroeder, C.J., concurring). "[I]t is the duty of the court to . . . eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Committee Note (1976), Rule 4, § 2254 Rules.

Considering the claims in Kenfield's federal petition in light of the state court record, it is clear that he is not entitled to relief.

## II. Background

### A. Trial

Beginning at about 3:00 a.m. on June 28, 2007, gunshots were fired in downtown Chester, Montana. Most were aimed at businesses deserted at that hour. One, however, was fired at the Liberty County Sheriff's Office, nearly hitting a dispatcher who was working the midnight to 8:00 a.m. shift.

Petitioner Kenfield quickly came to the attention of investigators. On June

29, 2007, he was charged with one count of accountability for attempted deliberate homicide, three counts of felony criminal mischief, and six counts of misdemeanor criminal mischief. He was tried by a jury in September 2008. The State called witnesses who saw or heard Kenfield or his truck before and after the incident and presented video footage from a motion-activated surveillance camera mounted on the outside of the Sheriff's Office. The State also presented two expert witnesses, one who analyzed bullet trajectories and one who analyzed the video footage.

The jury deliberated for several hours and then notified the trial court that it was deadlocked. The trial court gave an *Allen* charge. The jury resumed its deliberation and ultimately convicted Kenfield on all counts. On January 21, 2009, he was sentenced to serve a total term of 15 years in prison, with five of those years suspended. *See* Am. Postconviction Pet. (Doc. 7-11) at 1-2 ¶ 1; Judgment at 3-5 (Doc. 7-11 at 25-27), *State v. Kenfield*, No. DC-07-294 (Mont. 12th Jud. Dist. Feb. 6, 2009).

## B. *Kenfield I*

Kenfield appealed. While his appeal was pending, he filed an unopposed motion seeking remand to the trial court to develop a claim of ineffective assistance of counsel. The motion was granted and the appellate briefing schedule was stayed on January 11, 2010. Following an evidentiary hearing in May 2010, the trial court denied Kenfield's claim. Kenfield's appellate counsel appealed that

ruling in the Montana Supreme Court on direct review. On June 21, 2011, the Montana Supreme Court rejected Kenfield's claims of ineffective assistance and affirmed his conviction. *See* Mem. Op. at 4 ¶ 7, *State v. Kenfield*, No. DA 09-0269 (Mont. June 21, 2011).[1]

### B. *Kenfield II*

On September 19, 2012, Kenfield, acting pro se, filed in the trial court a 26-page petition for postconviction relief containing 35 claims of ineffective assistance of counsel, 72 pages of exhibits, an affidavit, and a memorandum of law. *See* State Exhs. 7-10 (Docs. 7-7 through 7-10). Kenfield explained that he was filing the petition pro se in order to file on time but had retained attorney Scott Albers and anticipated that he would file an amended petition. *See* Pro Se Postconviction Pet. (Doc. 7-7) at 4.

On December 17, 2012, Albers filed a "second motion" for postconviction relief. This document principally challenged the trial court's finding, in *Kenfield I*, that Kenfield admitted the shooting to trial counsel but said he fired the shots from a location other than the one the State's evidence suggested. The finding was based on the trial court's credibility assessment of both trial counsel and Kenfield. Albers argued that subsequent disciplinary proceedings against trial counsel

---

[1] This decision and the other Montana Supreme Court decisions and dockets cited herein are available on the court's website, https://supremecourtdocket.mt.gov (accessed Oct. 3, 2017).

constituted "newly discovered evidence" of trial counsel's lack of credibility. He also reasserted the same claims of ineffective assistance that were litigated in *Kenfield I*, adding a host of documents from the disciplinary proceedings. *See* Am. Postconviction Pet. (Doc. 7-11) at 2-4 ¶¶ 2-6, 7 ¶ 13, 9-10 ¶¶ 21-22, 13 ¶ 31; *see also id.* at 17-21 ("Petition for Relief Due to Ineffective Representation by Trial Counsel," filed in *Kenfield I* and dated May 13, 2010).

The trial court noted Kenfield's postconviction petition was timely and properly filed and directed the State to respond. *See* Order (Doc. 7-17) at 1-2. The State did so on June 5, 2013, asserting the petition was procedurally barred and should also be denied on the merits. *See* Resp. to Pet. (Doc. 7-14) at 1-13. On July 11, 2013, the trial court denied Kenfield's petition both on procedural grounds and for lack of merit. *See* Order (Doc. 7-18) at 1-5.

Kenfield appealed. On July 1, 2014, the Montana Supreme Court affirmed the trial court's denial. *See* Mem. Op. at 3 ¶ 5, *Kenfield v. State*, No. DA 13-0598 (Mont. July 1, 2014).

### D. *Kenfield III*

On November 4, 2015, Kenfield submitted a "Third Petition for Post-Conviction Relief" consisting of 66 pages and 137 pages of exhibits. He stated that he had received, on November 19, 2014, a report of a reconstruction of the shooting incident, completed by Sky Lark Technology at his request. He averred

the report demonstrated he could not have fired from his truck in the way the State theorized at trial. He also again disputed trial counsel's testimony in *Kenfield I* that he had admitted guilt, and he alleged additional claims of ineffective assistance of counsel. *See generally* Third Pet. for Postconviction Relief (Docs. 7-19 through 7-22). On November 20, 2015, the trial court dismissed the petition on procedural grounds and for lack of merit. *See* Order (Doc. 7-25) at 1-4.

Kenfield appealed. On August 16, 2016, the Montana Supreme Court affirmed the trial court's ruling. *See Kenfield v. State*, 377 P.3d 1207, 1213 ¶ 23 (Mont. 2016).

### E. Petition in This Court

Kenfield signed his federal habeas petition and deposited it in the prison mail system on November 15, 2016. Pet. at 6, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

### III. Claims

Kenfield contends, first, that charging him by information rather than indictment violated state law. Second, he asserts that a new reconstruction of the incident based on the State's theory demonstrates he is innocent. Third, he alleges that the trial judge visited the crime scene the day after the shooting and so violated Kenfield's right to due process by presiding at trial. Fourth, he avers that a former co-defendant, whose case was dismissed, told police, "If something happened, I

would have remembered it," but the prosecution failed properly to disclose the statement. Finally, he contends that his right to confront witnesses was violated when the business owners whose buildings were shot at did not testify at trial.

Most of Kenfield's claims also include an allegation of ineffective assistance of counsel. Such claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Kenfield must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

## IV. Analysis

Kenfield's petition may be subject to dismissal on procedural grounds. After reviewing his claims and exhibits in light of the trial transcript, however, the most efficient means of addressing the petition is to consider each claim on the merits. Issues of exhaustion, default, or how to apply the standards of 28 U.S.C. § 2254(d) need not be discussed.

### A. Charge by Information

Kenfield claims the procedure of charging crimes by information violates

state law.  He also claims he was entitled to a preliminary examination before an information could be filed.  *See* Pet. (Doc. 1) at 4 ¶ 15A; *id.* at 7-10.

First, even if Kenfield had been charged in violation of state law, "only noncompliance with *federal* law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts."  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (emphasis in *Corcoran*).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  This claim, therefore, does not allege a basis on which federal habeas relief may be granted.

Second, there was no violation of state law.  The Montana Supreme Court is the highest authority in the land—superior even to the United States Supreme Court—on the content and meaning of Montana law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute.").  The Montana Supreme Court holds the information process does not violate state law.  *See Kenfield III*, 377 P.3d at 1212-13 ¶ 21.  Therefore, it does not violate state law.

Third, even assuming Kenfield had phrased his claim as a violation of federal law, there was no violation of federal law.  Montana's statutes governing

pretrial proceedings in criminal cases parallel federal law.  A person who is arrested is entitled to an initial appearance to be advised of the charge and his rights and for a decision as to release.  Probable cause is not an issue in an initial appearance.  *See* Mont. Code Ann. §§ 46-7-101(1); Fed. R. Crim. P. 5(d), 58(b)(2).  A preliminary examination (or, in federal law, a preliminary hearing) is designed to determine whether a charge is supported by probable cause.  A preliminary examination or hearing is required when a person faces a charge that cannot be tried in a state justice court or a federal magistrate judge's court, but it is not required if an information is filed or an indictment is returned.  Both an information and an indictment indicate probable cause has already been found to support the charge, so a preliminary examination or hearing is moot.  *See* Mont. Code Ann. §§ 46-10-105(2)-(4), -203; Fed. R. Crim. P. 5.1(a)(2)-(5), (e); *United States v. Calandra*, 414 U.S. 338, 342-46 (1974).

      The only remaining question is whether federal law is violated when state law does not entitle defendants to indictment by grand jury.  The United States Supreme Court has recognized for 133 years that a State may choose to charge a defendant by information.  *See Hurtado v. California*, 110 U.S. 516, 538 (1884).  The two procedures are not fundamentally different.  A defendant is not entitled to appear before a grand jury for the purpose of contesting probable cause or examining witnesses or for any other purpose.  A defendant is not entitled to notice

that a grand jury is investigating. An indictment may be based on hearsay or on incompetent or even inadequate evidence. Nor is the prosecution required to present exculpatory evidence. *See, e.g.*, *United States v. Williams*, 504 U.S. 36, 45 (1992); *Calandra*, 414 U.S. at 345; *Lawn v. United States*, 355 U.S. 339, 348-50 (1958); *Costello v. United States*, 350 U.S. 359, 361-64 (1956); *Holt v. United States*, 218 U.S. 245, 247-48 (1910). A defendant who is charged by information does not lose any right or opportunity he would have had if charged by indictment, because he does not have such rights or opportunities before a grand jury. The only distinction is that an information is endorsed by a judge (in Montana, an elected judge) and an indictment is endorsed by members of the community. *Hurtado* holds that this is a distinction without difference.

Here, as in *Hurtado*, the determination of probable cause was "merely a preliminary proceeding." 110 U.S. at 538. In the course of Kenfield's prosecution, "[t]he same notice was given, the same process was issued, the same pleas were allowed, the same trial by jury was had, the same judgment was given by the same judges, as if the prosecution had originally been by indictment." *Id.*

This claim should be denied.

### B. Actual Innocence

Kenfield contends that a recently-completed reconstruction proves he is innocent of the crimes of conviction because it refutes the testimony of one of the

State's experts. *See* Pet. at 4 ¶ 15B; *id.* at 11-15; Report (Doc. 4-1 at 2-18).

Actual innocence may be relevant to excuse what would otherwise be a procedural bar preventing a federal court from reaching the merits of a constitutional claim. *See, e.g.*, *Smith v. Baldwin*, 510 F.3d 1127, 1139-40 (9th Cir. 2007) (en banc). Since Kenfield's claims are being considered on the merits, there is no need to decide whether he has made a sufficient showing of actual innocence.

Kenfield, however, asserts his actual innocence as a freestanding claim for relief, not as a means of excusing a default or time bar. A claim of actual innocence has "never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Federal habeas courts sit to ensure trials fairly conform to the guarantees of the federal Constitution, not to decide whether trials produce correct verdicts. The Supreme Court discussed this point at length in *Herrera*. *See* 506 U.S. at 398-417. To date, no federal appellate court has recognized actual innocence as a basis on which a federal court may order a new trial or release of a convicted state prisoner.

Unlikely as it is, a very compelling case for actual innocence might one day persuade a federal court to break new ground and grant habeas relief to a state prisoner. In an abundance of caution, the claim will be addressed on its merits.

Kenfield states that the new study "utilized the actual truck and using the

State's Experts trajectories on Shots #3, 8, 9 proves beyond doubt that the 3 shot trajectories could not possible have been fire from my truck as I drove passed the Sheriff's building." Pet. at 12 (emphasis added). The study suggests the shots were fired from below the frame of the passenger door, *see* Report (Doc. 4-1 at 9), and that, if fired from the back window, two of the three shots would hit the tail gate (assuming they missed the ATV). *See id.* at 11.

Even so, the report does not conclusively refute the expert's testimony at trial. Spinder testified that "all three of those [shots] are at or about the rail or bottom of that pickup window," "[r]ight in that area." 2 Trial Tr. at 443:14-17; *see also id*. at 430:15-442:25. He also testified that a trajectory is an estimate, not a straight line but a "cone shape pattern" of "plus or minus five degrees" in deviation from the straight line. Spinder said the deviation or margin of error produced a variant in height from 44 to 62 inches off the ground, from "just below the lip of the box" of the pickup the police used in taking the measurements to "several inches above the box." *Id.* at 463:5-464:21. In sum, he made an educated guess. Neither Spinder nor Kenfield's new report account for variables like the tire pressure or the weight of fuel in the truck or ATV or anything else that might have been in the truck, all of which could have affected its height. Similarly, it is not possible to know precisely where the truck was located within the lane of travel when shot 3, shot 8, and shot 9 were fired. But it is clear the truck was moving. It

could readily have been a few feet closer or farther away than the new report assumes. In comparison to the other possibilities, it is still most likely the bullets were fired came from the truck. *See, e.g.*, 4 Trial Tr. at 722:21-725:20, 800:1-803:3.

But, be that as it may, other items of evidence besides the reconstruction could still persuade a reasonable juror beyond reasonable doubt that Kenfield was accountable for attempted deliberate homicide and for each charge of criminal mischief. The truck was Kenfield's. He was present with it in town shortly before the shooting. The truck drove slowly by the sheriff's office at a time consistent with the shooting and at a pace of 12 to 16 miles per hour. Anyone outside the sheriff's office would have seen the dispatcher in the window. The dispatcher heard the gunshots and a loud vehicle like Kenfield's truck immediately afterward. The truck's headlights were on as it approached the sheriff's office but switched off as it passed. Other witnesses heard a loud vehicle in locations and at times more or less consistent with Kenfield stopping to monitor any response by authorities, then returning for a second round of shooting away from the sheriff's office, then heading out toward the Kenfield residence. No other vehicles were seen on the surveillance camera at the pertinent time, and officers located none. Kenfield's brother had recently been sentenced to federal prison based on the investigation and testimony of a Liberty County deputy, and Kenfield had been

drinking.

The new report has some persuasive value, but it is not compelling evidence that Kenfield is innocent. This claim should be denied.

### C. Judge's Crime Scene Visit

Kenfield alleges the trial judge violated his right to due process by visiting the sheriff's office to see the bullet holes on Thursday, June 28, 2007. He contends that "[t]his action presented an appearance of bias and potential for bias and Constitutional Law requires recusal of a judge who acts in the investigation of a criminal case or who acts in the accusatory process of a criminal case." Pet. at 16.

"[E]xtreme facts" are required to create "an unconstitutional probability of bias." *Caperton v. A. T. Massey Coal Co., Inc.*, 556 U.S. 868, 887 (2009). Kenfield points to no facts of that type. He does not claim the trial judge was involved in identifying him as the perpetrator, in deciding whether to prosecute, or in deciding what charges to file. A judge's role in deciding whether there was probable cause to support the filing of an information is not different than a judge's role in deciding whether there is probable cause to support a search warrant. The Court is not aware of any authority suggesting that a judge who issues a search warrant must be recused from all further proceedings in the case. Likewise, a judge who grants leave to file an information is not recused from all further proceedings in the case.

Moreover, judges fairly preside over trials despite having seen 24/7 cable

14

news coverage of the Boston Marathon bombing or 9/11. Stopping by the sheriff's office to see the bullet holes was an unremarkable act that would not influence a reasonable jurist. There is no basis to assume it had inordinate influence on the trial judge here.

This claim should be denied.

### D. Failure to Disclose Exculpatory Statement

Kenfield asserts that a co-defendant, whose charges were dismissed by the State, told police and/or the prosecutor, "If something happened, I would have remembered it." Pet. at 16; *see also* Resp. to Order Ex. (Doc. 8-1) at 1 (purporting to be notes taken by prosecutor, reporting witness's statement, "Even drunk, I would have recollected something"). Kenfield contends the statement was exculpatory but not disclosed. *See* Pet. at 16.

The State is required to produce to the defense, before trial, exculpatory information in its possession. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 432-38 (1995). But Kenfield must also show he was prejudiced by any failure to disclose the information. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434.

Both parties and the jury were aware at the time of trial that there could have

been two people in Kenfield's truck when it drove by the sheriff's office. Both parties (and likely the jury) knew that if there was a second person, it was probably Joel, an out-of-towner on a crew working on the irrigation system at the Tiber Dam. *See, e.g.*, 1 Trial Tr. (Doc. 7-2) at 176:17-177:10, 188:18-190:23; 3 Trial Tr. (Doc. 7-4) at 698:6-14; 4 Trial Tr. (Doc. 7-5) at 797:14-798:2. The fact that the other person stated he could not remember anything or denied that anything happened would not be especially persuasive to a reasonable juror. If he was in Kenfield's truck at the time of the shooting, he was implicated in the crimes charged; and if he was not, his statement was not relevant.

There is no reason to suppose Kenfield would have been acquitted, or even that the jury might have been unable to reach a verdict, if the statement had been disclosed to the defense. This claim should be denied.

### E. Confrontation Clause

Finally, Kenfield asserts that his rights under the Sixth Amendment's Confrontation Clause were violated when the prosecution failed to call at trial the owners of the businesses affected by the shooting. He also claims his own counsel was ineffective because he did not call the witnesses. *See* Pet. at 17.

The Confrontation Clause guarantees that a defendant has a full and fair opportunity to confront witnesses whose testimony the prosecution introduces against the defendant. *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 50-59, 68-

69 (2003). Kenfield does not identify any testimony from the business owners that was unfairly introduced against him in the form of hearsay. Nor does he identify any testimony the business owners could have given to assist his defense or reduce his restitution obligation. Therefore, he does not show either that the prosecution violated the Confrontation Clause or that his counsel was ineffective. This claim should be denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Kenfield's claims do not have sufficient substance to support a COA. The procedure for charging felonies in Montana is not objectionable. Kenfield's claim of actual innocence is not compelling enough to make it the ground-breaker that results in federal habeas relief being awarded to a state prisoner. There is no

reason to suppose the local judge's visit to the sheriff's office to see the bullet holes the day after the shooting would have made him unable to be fair and impartial. The statement of a witness who may or may not have been present at the time of the shooting would not influence a juror's decision when, as here, the witness says he does not remember a shooting. The prosecution does not violate the Confrontation Clause by not introducing testimony from a witness; further, Kenfield does not identify any evidence or testimony that could have assisted his defense or ameliorated the sentence, so there is no reason to infer that counsel was ineffective.

Reasonable jurists would find no basis to encourage further proceedings. A COA is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (Docs. 1, 4, 8) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION

## AND CONSEQUENCES OF FAILURE TO OBJECT

Kenfield may object to this Findings and Recommendation within 14 days.[2] *See* 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Kenfield must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 11th day of October, 2017.

    /s/ John Johnston
John Johnston
United States Magistrate Judge

---

[2] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.